UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE R.,[1]<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:20-cv-04453-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On October 13, 2016, Plaintiff applied for supplemental security income,

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

alleging disability since July 1, 2015. Plaintiff's application was denied. (Administrative Record ["AR"] 88-94.) A hearing took place on April 23, 2019 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 51-75.)

In a decision dated May 2, 2019, the ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease. (AR 41.) After finding that Plaintiff's impairment did not meet or equal a listed impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a light work with the restriction to frequent pushing or pulling with the lower extremities and occasional postural activities. (AR 42.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform his past relevant work as a retail manager as generally performed. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 44.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ's determination that Plaintiff can perform his past relevant work is supported by substantial evidence.

2. Whether the ALJ properly rejected Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. The ALJ's determination that Plaintiff can perform his past relevant work.

Plaintiff contends that the ALJ's determination that he can perform his past relevant work is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erroneously relied upon the VE's testimony because Plaintiff's past relevant work at Target is not a light-exertion job, but rather a hybrid job. Plaintiff also suggests that the Target job may not have constituted past relevant work at all because he performed it more than 15 years before the ALJ's decision. (ECF 20 at 4-6.)

#### A. Relevant Law

At Step Four of the Commissioner's sequential evaluation process, a claimant has the burden of showing that he can no longer perform his past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(e), 416.920(e). In evaluating a claimant's ability to perform past relevant work, an ALJ may consider either the past relevant work as actually performed by the claimant or as generally performed in the national economy. *See Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016); *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); Social Security Ruling ("SSR") 82-61, 1982 WL 31387.

The "generally performed test" is designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy*, 825 F.3d at 569. Pursuant to SSR 82-61:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under [the "generally-performed"] test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

*Stacy*, 825 F.3d at 569 (quoting SSR 82-61).

When determining how work is generally performed, the ALJ can rely on the descriptions in the Dictionary of Occupational Titles ("DOT") or provided by a vocational expert ("VE"). *See* SSR 82-61, 1982 WL 31387; *Pinto*, 249 F.3d at 845; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

No matter which test is applied at Step Four, "the ALJ may not classify a past occupation according to the least demanding function." *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008) (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1995)).

B. <u>Factual Background</u>

In his work history report, Plaintiff listed three prior jobs: meat cutter, truck driver, and retail manager. Plaintiff performed the job of retail manager from 1995 to 2004. (AR 198.) He described his job as "manage the floor, set up display station, scheduling employees, stock shelves." (AR 200). Plaintiff also hired and fired employees. (AR 200.) Plaintiff indicated that he supervised 65-85 people and he spent his entire shift supervising people. (AR 200.)

At the hearing, Plaintiff testified that he started working at Target as an entry-level truck unloader. Plaintiff worked his way up and eventually became a manager. According to Plaintiff, he oversaw a team of 75, making sure that the trucks were offloaded, stocked and backloaded. (AR 60-61.) Plaintiff was "the guy with the clipboard that would be assigning people to different trucks. Hey, you're going to break down this one and this is where it goes…" (AR 61.)  In performing this job, Plaintiff sometimes assisted in the unloading and setting up displays, which required him to lift and carry up to 50 pounds. (AR 62.)

The VE classified Plaintiff's job at Target as retail manager (DOT 185.167-046), which is generally light, but explained that Plaintiff had performed it at the heavy exertional level. (AR 70.) In the VE's opinion, an individual with Plaintiff's RFC could perform the job of retail manager as generally performed. (AR 70-71).

C. Analysis

Plaintiff argues that reversal is warranted because the ALJ erroneously classified his past relevant work at Target "by the least demanding task." (ECF 20 at 4-5.) According to Plaintiff, his job at Target was not a light job, but a "hybrid job" because it included assisting with loading/unloading as well as setting up displays "by stacking and moving things." (ECF 20 at 5.)

The Commissioner argues that Plaintiff waived this issue because he did not challenge the classification issue during the administrative proceedings. (ECF 23 at 4-5.) As the Commissioner correctly points out, Plaintiff was present at the hearing and represented by an attorney. He had an opportunity to question the VE. When the VE classified his past relevant work as a retail manager, Plaintiff raised no objection. (*See* AR 51, 73-74). Thus, Plaintiff's challenge to the classification of his past relevant work is forfeited by his failure to raise it during the administrative proceedings. *See Hurtado v. Berryhill*, 749 F. App'x 663, 664 (9th Cir. 2019) ("Because [claimant]"—"who was represented by counsel at his administrative

hearing"—"did not raise either issue [about the nature of his past relevant work], present any evidence, or challenge the vocational expert's testimony at the administrative hearing, those arguments are forfeited")).

Moreover, even assuming Plaintiff's claim was not forfeited, it lacks merit. Plaintiff argues that the ALJ erred by classifying his former work at Target according to its least demanding duties, which failed to account for the heavy lifting and carrying he performed while doing that job. In support of his claim, Plaintiff relies upon *Valencia*, 751 F.2d at 1086, *Carmickle*, 533 F.3d at 1166, and *Stacy*, 825 F.3d at 569. (ECF 20 at 4-5.)

In *Valencia*, the Commissioner relied upon one of the many tasks associated with the claimant's past relevant work as agricultural laborer – namely, tomato sorting – to classify her past relevant work as light. *Valencia*, 751 F.2d at 1086. The Ninth Circuit held that classifying the claimant's prior work based upon a single task was error when the claimant's past relevant work as an agricultural laborer primarily involved performing other, medium exertion tasks. *Id*. at 1087. Similarly, in *Carmickle*, the Ninth Circuit found that the ALJ erred in classifying the claimant's job as "a purely supervisory position" when only 20 percent of the claimant's duties as a construction supervisor involved supervision; the remainder of his time was spent performing manual labor. *Carmickle*, 533 F.3d at 1166.

The Ninth Circuit confronted a related issue in *Stacy*. There, the claimant argued that the ALJ erred by classifying his past relevant work based on the least demanding aspect of the job – namely, supervising. *Stacy*, 825 F.3d at 569. The Court of Appeals rejected the argument, explaining that "when [the plaintiff] performed that job, he engaged in supervisory duties 70–75 percent of the time. The fact that his employer also required him to occasionally do other, non-supervisory tasks does not change the fundamental nature of his work." *Id*. at 570. Distinguishing *Valencia* and *Carmickle*, it was noted that in those cases, "the least demanding aspect" of the

claimant's past job was something the claimant did less than half the time, and the ALJ erred in equating that one task with a full time job." *Id*. The Ninth Circuit held that *Valencia* and its progeny do not apply where (1) the "least demanding function" is a task that the claimant actually performed most of the time; and (2) the DOT defines the claimant's past job as requiring only that least demanding function. *Id*. Accordingly, it concluded that the ALJ "did not categorize [the claimant's] past work according to its least demanding function but instead correctly applied the 'generally performed' test." *Id*.

      Here, as in *Stacy*, supervising others was not merely a small part of Plaintiff's duties as a retail manager at Target. To the contrary, the record indicates that Plaintiff spent the "[w]hole day" supervising others. (AR 198.) Furthermore, the DOT defines Plaintiff's past job as either personally performing *or supervising employees performing* various duties – including, for example, planning and preparing work schedules; assigning employees to specific duties; preparing, or directing workers preparing, merchandise displays; supervising employees engaged in taking inventories; ensuring compliance of employees with established security and record keeping procedures and practices; and interviewing, hiring, and training employees. DOT 185.167-046; *see* 1991 WL 671299. That Plaintiff may have performed other, non-managerial tasks "does not change the fundamental nature of his work." *Stacy*, 825 F.3d at 570. Accordingly, the ALJ's classification of Plaintiff's job is supported by substantial evidence. It also follows that the ALJ did not err in concluding that Plaintiff could perform his past relevant work, which, as generally performed is a light-work position consistent with his RFC. *See, e.g., Kawelo v. Berryhill*, 732 F. App'x 584, 586-587 (9th Cir. 2018) (rejecting composite-job argument when plaintiff's loan-officer duties were "not merely a component" of her past relevant work as bank customer-service representative but encompassed "separate identifiable occupation" that was captured by DOT classification); *Jesus P. v. Berryhill*, 2019

WL 134552, at *5 (C.D. Cal. Jan. 8, 2019) (rejecting claim that ALJ erroneously classified past relevant work, failing to consider claimant's strenuous tasks, where the claimant described his last job as involving supervising people "all day"); *Holbrook v. Berryhill*, 2018 WL 1071652, at *6–7 (E.D. Cal. Feb. 27, 2018) ("Because the evidence shows that Plaintiff completed the work of a supervisor and performed light work for the majority of the time, the ALJ did not err in finding Plaintiff could perform his past relevant work as a manager/supervisor, as it is generally performed.").

Plaintiff further contends that his job at Target does not qualify as past relevant work because he performed it more than 15 years before the ALJ's decision. (ECF 20 at 5, citing 20 C.F.R. § 416.965(a)). In relevant part, that regulation provides:

> Work you have already been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled applies. … The 15–year guide is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 416.965(a)).

Contrary to Plaintiff's conclusory assertion, "the regulation does not preclude considering past work experience older than fifteen years. Rather, fifteen years is the time frame that the agency 'usually consider[s].'" *Trundle v. Comm'r of Soc. Sec.*, 484 F. App'x 94, 96 (9th Cir. 2012) (citing 20 C.F.R. § 404.1565(a)). Furthermore, Commissioner points out that the ALJ decision was dated May 7, 2019 and Plaintiff's earning records show he had enough earnings for all four quarters of 2004. (*See* AR 182-183). Based upon this record, the Commissioner argues that Plaintiff actually did work this job within the 15-year period. (ECF 23 at 4.) Plaintiff has not disputed

the Commissioner's contention. For these reasons, the ALJ did not err by considering Plaintiff's past relevant work as a retail manager at Target in reaching his decision.

## II. The ALJ's Assessment of Plaintiff's Subjective Symptom Claims

Plaintiff contends that the ALJ erred in rejecting his testimony regarding his subjective symptoms and limitations. (ECF No. 20 at 6-12.) The Commissioner argues that the ALJ provided numerous legally sufficient reasons for his credibility determination. (ECF No. 23 at 6-9.)

### A. Plaintiff's Subjective Complaints

Plaintiff testified that he stopped working in 2015 because his back went out and he was unable to stand for three or four months. Initially, Plaintiff had to use a cane and hold onto things in order to move about the house, but he no longer uses the cane "as much." Plaintiff suffers from constant pain in his back radiating to his left leg. His right leg feels numb and cold. (AR 63-66.)

Plaintiff treated his back pain with physical therapy and pain medication. At least as of the date of the hearing, Plaintiff indicated he was discussing the possibility of surgery with his doctor. (AR 65-67.)

According to Plaintiff, he is able to lift about 15 pounds, though it is a strain to do so. (AR 64-65.) He can walk approximately four to five house lengths before needing to rest. Plaintiff estimated that he was able to stand for about 10 to 15 minutes before needing to sit down. Plaintiff testified he could do "small laundry," but could not perform sweeping or vacuuming. (AR 67-69.)

### B. Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678

(9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

C. Analysis

In making his credibility determination, the ALJ first found that the objective medical evidence did not support the full extent of Plaintiff's subjective complaints. The ALJ did not totally depreciate Plaintiff's credibility; rather, he did so to the extent that his allegations were inconsistent with the RFC determination, which imposed various limitations beyond those opined by medical sources. (AR 42-44.)

The ALJ summarized the medical evidence, beginning with x-rays from December 2012, which showed muscle spasm in Plaintiff's cervical spine, with degenerative disc disease from C3 to C7 and muscle spasm in Plaintiff's lumbar spine, with degenerative disc disease at L4-L5 and L5-S1, and vascular calcification. (AR 259-260.)

In May 2016, Plaintiff complained of lumbar pain with radiation to the left side. Physical therapy was prescribed. (AR 296-297.) An x-ray showed scoliosis and

degenerative changes, most advanced at L4-L5 and L5-S1. (AR 315.) In a June 2016 follow-up, examination revealed tenderness in the lumbar spine with right sciatica. He was diagnosed with chronic bilateral low back pain with sciatica and prescribed Gabapentin and Tramadol (AR 292-293.) An MRI conducted in June 2016 showed multilevel degenerative changes of the lumbar spine with severe spinal canal stenosis at L3-L4, severe spinal canal stenosis at L4-L5 and moderate to severe spinal canal stenosis at L5-S1, and a broad-based disc protrusion measuring 5 mm. (AR 313-314.)

An examination in August 2016 revealed decreased range of motion with mild tenderness to the left lower extremity. (AR 286, 288, 290). An examination performed in March 2017 showed normal range of motion, and Plaintiff reported that his pain was "5/10" and manageable. (AR 272.) An x-ray of Plaintiff's lumbar spine showed moderate degeneration of L4-L5 and L5-S1 with grade I anterior spondylolisthesis at L4-L5 and flattening of the lumbar lordosis with severe facet disease at L4-S1. (AR 319.)

In April 2017, Warren Yu, M.D. performed a consultative orthopedic examination of Plaintiff. Plaintiff walked with a normal gait, could toe and heel walk, and could squat and rise. Plaintiff had moderate tenderness to palpation in his lumbar spine, but no spasm. Range of motion was limited. Straight leg raise test was negative in both the supine and seated position. Muscle strength, reflex, sensory, and neurological examinations were normal. Dr. Yu diagnosed Plaintiff with disc disease at L4-S1 with grade I spondylolisthesis at L4-L5. (AR 316-320.)

Progress reports from July 2017 through April 2018 revealed tenderness and occasional notes of decreased range of motion. During this period, the ALJ observed the absence of any indication of loss of muscle strength or neurological deficit. (AR 354-372.) In June and July 2018, Plaintiff exhibited tenderness, but his range of motion was normal. (AR 342-347.)

In July 2018, Plaintiff was seen by Sean Xie, M.D. for a neurosurgical

consultation. Examination revealed a steady gait without weakness, a normal range of motion, full muscle strength, a normal sensory examination, and a negative straight leg raise test. Dr. Xie noted the MRI showing significant canal and foraminal stenosis and diagnosed Plaintiff with lumbar degenerative diseases. He recommended a course of physical therapy as wall as possible epidural injections. (AR 378-380.)

Notes from an August 2018 examination revealed normal gait, but limited range of motion and a positive straight leg raise test. (AR 339-340.) An October 2018 progress note indicated that Plaintiff had "tender lumbar spine, pain by movement." Physical therapy was again recommended. (AR 337-338.) In February 2019, Plaintiff exhibited a decreased range of motion, pain of the lumbar spine and right shoulder. (AR 331-332.)

In sum, the medical record contains objective evidence of degenerative disc disease, a single positive leg raise, some tenderness and decrease in range of motion. Otherwise, many of Plaintiff's physical examinations were essentially normal. In light of this record, the ALJ properly concluded that the objective medical evidence did not support Plaintiff's allegations of limitations beyond those imposed by the ALJ's RFC of a restricted range of light work. As long as this was not the ALJ's sole reason for discounting Plaintiff's testimony, the ALJ properly relied upon the lack of objective medical findings supporting Plaintiff's alleged symptoms and limitations. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (including lack of supporting medical evidence as one factor that an ALJ can rely on in discrediting claimant testimony). Here, the ALJ provided additional reasons for his credibility assessment.

In discussing the credibility of Plaintiff's subjective complaints, the ALJ observed that Plaintiff's treatment had been essentially routine and conservative in nature. (AR 43.) The ALJ noted that Plaintiff received treatment only through his primary care physician. The ALJ found it significant that the record lacked any

evidence that Plaintiff had undergone any invasive treatments in an effort to alleviate the allegedly disabling symptoms and had not participated in a formal pain management program. Indeed, the ALJ observed that despite it being recommended, nothing in the record indicated that Plaintiff ever sought or obtained physical therapy. Finally, the ALJ noted that although Plaintiff had been prescribed Gabapentin and Tramadol, he had recently relied upon aspirin for pain relief. (AR 43)

A claimant's limited or infrequent treatment, as well as the unexplained failure to obtain treatment may constitute clear and convincing reasons for discrediting a claimant's testimony. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified....") (citation omitted); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms....").

Here, the ALJ's characterization of Plaintiff's treatment as inconsistent with the severity of his alleged symptoms is supported by the record. As set forth above, Plaintiff's treatment primarily consisted of visits to his primary care physician and the prescription of pain medication. Although physical therapy was recommended, there is no evidence suggesting that Plaintiff sought out such therapy and no explanation for his failure to do so.[2] Similarly, while the possibility of injections was

---

[2] Plaintiff points out that he "did go to pain management and on August 21, 2019, he is noted to be taking 400 mg Ibuprofen, Norco, and using natural remedies of marijuana." (ECF 20 at 9-10, citing AR 17.) The medical record to which Plaintiff cites reflects treatment received after the ALJ issued his decision. Evidence that Plaintiff sought pain management in August 2019, was apparently prescribed a different narcotic medication, and reported "sufficient analgesia from the current regimen," (*see* AR 23) does not alter the generally conservative character of his overall treatment

raised, the record includes nothing suggesting that Plaintiff sought or received any injections for his allegedly disabling pain. Plaintiff suggests that the record indicates "he had injections with outside providers." (ECF 20 at 10, citing AR 21, 23, 25.) Reference to the records to which Plaintiff cites reveals the opposite. In each instance, there is a blank space under the heading "Injections." (AR 21, 23, 25.) Somewhat inconsistently, Plaintiff goes on to state, "we do not know if Roberts had injection[s] or not but we do know he took Gabapentin and Norco and neither were particularly helpful." (ECF 20 at 11.) Notwithstanding Plaintiff's attempt to undermine the factual basis for the ALJ's decision, the record here supports the conclusion that Plaintiff did not seek injections for his pain. *See Burch*, 400 F.3d at 679 (where the evidence is susceptible to more than one rational interpretation, Defendant's conclusion must be upheld). As such, the ALJ properly discounted Plaintiff's subjective statements based on his failure to seek a level of medical treatment consistent with his allegedly disabling pain and limitations. *See Burch*, 400 F.3d at 681 (lack of consistent medical treatment "powerful evidence" that plaintiff's claims of severe pain, depression, and fatigue were not credible); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" inconsistent with reports of disabling pain); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); *see also Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods.").

---

from the date of alleged onset in 2015. Nor does it have any effect on the ALJ's appropriate consideration of Plaintiff's failure to seek physical therapy or injections to treat his pain.

Accordingly, the Court concludes that the ALJ provided legally sufficient reasons supporting his determination to partially discredit Plaintiff's subjective allegations.

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 4/12/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE